UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS WEBSTER,<br>　　　　Plaintiff,<br>　　v.<br>MELODY SAMULSON,<br>　　　　Defendant. | Case No. 18-01969 EJD (PR)<br>**ORDER OF DISMISSAL** |

Plaintiff, a California state prisoner, filed the instant pro se civil rights action pursuant to 42 U.S.C. § 1983 against a psychologist, Dr. Melody Samuelson, at the Napa State Hospital. After an initial screening, the Court dismissed the complaint with leave to amend for Plaintiff to attempt sufficient facts to support an Eighth Amendment claim against Defendant. (Docket No. 7.) Plaintiff filed an amended complaint, (Docket No. 10, hereinafter "Am. Compl."), and exhibits, (Docket No. 12).

**DISCUSSION**

**A.　Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity. See 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

**B.    Plaintiff's Claims**

Plaintiff claims that on July 24, 2015, during a substance recovery group session, Defendant Dr. Melody Samuelson, a psychologist at Napa State Hospital, told him the following: "Tom you will kill yourself, you will die. Yea you will I'm certain of it. Tom are you listening to me? Listen to what I'm saying listen to the sound of my voice you will kill yourself. Tom look at me look at my face, remember what I look like you will kill yourself, Tom if I were you I would kill myself [*sic*]." (Am. Compl. at 2.) When he responded and asked her, "why am I going to kill myself?" Plaintiff claims that the "co-provider" Patrice Davis spoke up and said, "I think what she is talking about is with the potency of the drugs today if you used you might O.D." (Id.) Plaintiff claims that for the next two years, he suffered from Dr. Samuelson's statements, and that they still "haunt" him. (Id.) Plaintiff's last personal interaction with Dr. Samuelson was during a treatment team conference shortly thereafter, sometime during August 2015, but before September 6, 2015, when he filed a complaint regarding the conference. (Id., Ex. C.) During this meeting, Plaintiff claims he felt "verbally attacked" when he asked why Dr. Samuelson told him to kill himself, and that the treatment team refused to discuss it together. (Id. at 2-3.) There is no allegation that Plaintiff had any further interaction with Dr. Samuelson after that conference. (Id. at 3-4.) Plaintiff claims that thereafter, he filed complaints and

2

talked to various healthcare professionals and other treatment teams about Dr. Samuelson's statements over the course of the following two years. (Id. at 3.) In May 2017, he "won restoration of sanity" and was released to a program in Fresno, California. (Id. at 3-4.) Plaintiff claims that there he became "psychotic," during which he became "obsessed with the statements Dr. Samuelson had made and acted on her suggestions and tried to end [his] life." (Id. at 4.) Then on October 13, 2017, Plaintiff stuck a toothbrush in his eye in an attempt to commit suicide; his outpatient status was revoked and he was remanded back into custody. (Id.) Plaintiff claims that he attempted suicide "as a result of Dr. Samuelson's instructions." (Id.)

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993). A mentally ill prisoner may establish unconstitutional treatment on behalf of prison officials by showing that officials have been deliberately indifferent to his serious medical needs. See Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994); see also Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements analyzed as part of general health care requirements). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Doty, 37 F.3d at 546. Deliberate indifference requires a showing that prison officials possess a sufficiently culpable state of mind. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Specifically, it must be shown both that officials were subjectively aware of the serious medical need and failed to adequately respond to that need. Conn v. City of Reno, 591 F.3d 1081, 1096 (9th Cir. 2010). Additionally, the officials' actions must be the cause of the injury suffered as a result of their deliberate indifference. Id. at 1098.

Plaintiff's allegations are not sufficient to state a claim of deliberate indifference against Defendant Dr. Samuelson because he cannot establish that she had the sufficiently culpable state of mind. Farmer, 511 U.S. at 834. First of all, assuming that Defendant

3

1    Samuelson made the alleged statements, there is no allegation that she made such
2    statements believing that Plaintiff would actually attempt to take his life based on her
3    "instructions." According to Plaintiff, another healthcare provider, Patrice Davis, who was
4    present during the group meeting, interpreted Defendant Samuelson's statements as a
5    warning that Plaintiff might overdose due to the "potency of the drugs today." See supra
6    at 2. Accordingly, it cannot be said that these allegations establish that Defendant
7    Samuelson intended her comments to be a "suggestion" that Plaintiff actually kill himself.
8    Furthermore, nowhere during the two-year period thereafter is it alleged that Defendant
9    Samuelson was directly responsible for treating Plaintiff's mental health such that she was
10   subjectively aware of his obsession with her statements and failed to adequately respond to
11   his mental health needs. Plaintiff alleges that he continued to receive treatment for his
12   mental health needs throughout the two-year period from many other healthcare providers
13   to whom he made aware his obsession with Defendant Samuelson's statements. See supra
14   at 3. Nevertheless, Plaintiff still managed to gain "restoration of sanity" and was released
15   to an outpatient program. See supra at 3. Plaintiff makes no claim that any of these
16   healthcare providers acted with deliberate indifference to his serious medical needs in
17   doing so.

18       In conclusion, Plaintiff allegations fail to establish that Defendants Samuelson was
19   deliberately indifferent to his serious medical needs where his allegations show that he
20   continued to receive treatment for his mental health needs throughout the two-year period
21   following her alleged statements, such that it cannot be said that she was subjectively
22   aware that a failure to treat Plaintiff's condition on her part could result in further
23   significant injury or the unnecessary and wanton infliction of pain. See Doty, 37 F.3d at
24   546. Furthermore, the fact that other healthcare professionals deemed Plaintiff "sane" to
25   warrant release to an outpatient program was not attributable to Defendant Samuelson.
26   Accordingly, it cannot be said that it was due to any action or inaction by Defendant
27   Samuelson that caused Plaintiff's injury – i.e., attempted suicide while at an outpatient

4

program – when she was not responsible for determining his fitness for such a program or otherwise involved in Plaintiff's release. Id. at 1098.

Based on the foregoing, the amended complaint is DISMISSED without leave to amend because Plaintiff was already afforded one opportunity to amend and the Court finds no good cause to grant him another opportunity where the deficiencies from the original complaint remain the same. Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003) (district court's discretion to deny leave to amend particularly broad where plaintiff has previously filed an amended complaint); Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

## CONCLUSION

For the foregoing reasons, the amended complaint is **DISMISSED** for failure to state a claim for which relief can be granted.

**IT IS SO ORDERED.**

**Dated:** 3/25/2019

EDWARD J. DAVILA
United States District Judge

Order of Dismissal
PRO-SE\EJD\CR.18\01969Webster_dism(ftsac)

5